UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN CUPP, individually and for others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00071-SRC |
| MHM HEALTH PROFESSIONALS, LLC, d/b/a/ CENTURION PROFESSIONALS, | ) ) ) ) ) | |
| Defendant. | ) | |

**Memorandum and Order**

Plaintiff Lauren Cupp, individually and for others similarly situated, sued Defendant MHM Health Professionals, LLC (MHM) under the Fair Labor Standards Act (FLSA), alleging that MHM required her and her colleagues to remain on duty and responsible for patient care during unpaid time allotted daily for meal breaks. Doc. 10 at ¶¶ 30–37. Now, she moves for conditional certification of and court-authorized notice to a class of workers defined by the automatic meal-break pay deduction. Doc. 46. MHM opposes the motion, arguing that Cupp has not identified an FLSA-violating policy common to all members of the proposed class. Doc. 53. Because Cupp has met the lenient standard traditionally required for conditional certification at this stage of litigation, the Court grants her motion and orders the parties to meet and confer regarding how best to effect notice to members of the conditionally certified class.

**I.    Background**

MHM is a healthcare services company. *See* docs. 10, 21. Starting in July 2021, MHM employed Cupp as an hourly paid registered nurse. Doc. 10 at ¶ 13–15; doc. 21 at 4–5. Cupp

alleges that during her employ, MHM required her and her colleagues to stay on duty at all times even as it automatically deducted 30 minutes of pay each day as a purported "meal break." Doc. 10 at ¶¶ 7, 30–35.  That deduction, Cupp and her colleagues allege, deprived them of compensation including valuable overtime pay.  Doc. 10 at ¶¶ 36–37; doc. 46 at 9; *see also* doc. 47-2 at ¶ 4; doc. 47-3 at ¶ 4; doc. 47-4 at ¶ 4; doc. 47-5 at ¶ 4; doc. 47-6 at ¶ 4; doc. 47-7 at ¶ 4; doc. 47-9 at ¶ 4; doc. 47-10 at ¶ 4; doc. 47-11 at ¶ 4; doc. 47-12 at ¶ 4; 29 U.S.C. § 207 (setting overtime pay requirements).  Cupp and her colleagues also allege that despite a written policy authorizing meal breaks in which employees are "relieved of all duty," "free to come and go as they please," and entitled to pay in the event that they are unable to enjoy the full break, *see* doc. 53 at 3–4, MHM's actual practice was to regularly require "patient-facing" employees to work through allotted meal-break time while continuing to deduct pay for that purported break.  Doc. 10 at ¶¶ 2–7; 32–35; doc. 56 at 5; *see also* doc. 47-2 at ¶¶ 9–12; doc. 47-3 at ¶¶ 9–12; doc. 47-4 at ¶¶ 9–12; doc. 47-5 at ¶¶ 9–11; doc. 47-6 at ¶¶ 9–12; doc. 47-7 at ¶¶ 9–12; doc. 47-8 at ¶¶ 9–12; doc. 47-9 at ¶¶ 9–12; doc. 47-10 at ¶¶ 9–12; doc. 47-11 at ¶¶ 10–13; doc. 47-12 at ¶¶ 8–9.

      Consequently, Cupp sued for unpaid back wages under the FLSA.  *See* doc. 10; 29 U.S.C. §§ 201–19.  Fifty-six individuals consented to join her lawsuit, docs. 6, 8, 13–14, 29, 45, after which Cupp filed the instant motion for conditional certification of the following class: "All MHM employees in the United States who were subjected to MHM's auto-meal break deductions policy in Florida, Indiana, and Kansas."  Doc. 46 at 18.  (Two more individuals have since also consented to join the action.  Docs. 50, 57.)  In support of her motion, Cupp filed signed declarations of 11 MHM employees spanning the three states listed in her proposed class,

2

each describing how they remained responsible for patient care at all times despite MHM's regular deductions of pay for meal breaks. *See* docs. 47-2–47-12.

## II. Legal Standard

The FLSA permits plaintiffs to sue their employers for violations thereof on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute does not, however, define the phrase "similarly situated." The Eighth Circuit has helped fill that gap, explaining that plaintiffs may be similarly situated if "they [all] suffer from a single, FLSA-violating policy." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded*, 136 S. Ct. 1036 (2016) (citation omitted). When making this determination, the Court may consider "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id*. (citation omitted).

When applying the FLSA to a potential group of plaintiffs, district courts in this circuit have long applied a two-step analysis. *Getchman v. Pyramid Consulting, Inc.*, No. 4:16-cv-01208-CDP, 2017 WL 713034, at *4 (E.D. Mo. Feb. 23, 2017) (collecting cases). In the first step, the plaintiff moves for conditional certification "for notice purposes at an early stage of the litigation." *Id*. In the second step, the court determines, after the close of discovery, whether the plaintiffs are actually similarly situated. *Id*. The plaintiffs' burden for the first step "is not onerous." *Id*. (citation omitted). Plaintiffs need only provide "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id*. (citation omitted). To be sure, plaintiffs cannot meet their burden by providing "unsupported assertions that FLSA violations were widespread," or assertions "not based on personal knowledge." *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983); *Settles v. Gen. Elec.*,

No. 12-00602-cv-W-BP, 2013 WL 12143084, at *2 (W.D. Mo. Feb. 19, 2013). Instead, plaintiffs must make a "modest factual showing," *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 690 (W.D. Mo. Jan. 23, 2007), sufficient to "establish[] a colorable basis for their claim that a class of similarly situated plaintiffs exist." *McCallister v. First Banks, Inc.*, No. 4:13-cv-00561-HEA, 2014 WL 988448, at *2 (E.D. Mo. Mar. 13, 2014). "A colorable basis means that [plaintiffs] must come forward with something more than the mere averments in [the] complaint in support of [their] claim." *Id.*

This two-step approach, however, has recently lost its once-near-universal approval. In 2021, a federal appeals court flatly rejected the approach, holding that instead of a two-step sequence of ascending burdens, "the FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of litigation." *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 439–43 (5th Cir. 2021). Two years later, the Sixth Circuit chose a third, distinct path, maintaining the two-step process but increasing the step-one burden from requiring a "modest showing" of similarity to a demonstration of a "strong likelihood" of the same. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009–11 (6th Cir. 2023). In relatively quick fashion, what was once a quiet corner of the law has developed a three-way split in jurisprudence.

But through the turbulence, the district courts within this circuit have held steady. Not once have they abandoned the traditional two-step approach, *see Peck v. Mercy Health*, No. 4:21-cv-00834-RLW, 2023 WL 1795421, at *3 (E.D. Mo. Feb. 7, 2023) (collecting cases), nor has the Eighth Circuit indicated any disapproval of our longstanding practice. This Court declines, at least in this case, to be the first to break with tradition. As an initial matter, it is not clear to the Court how it might implement either of the approaches described by the Fifth or

4

Sixth Circuits. Nor is the Sixth Circuit's recent opinion in *Clark* likely to be the last word on the matter: other approaches may yet emerge that more explicitly set forth the implementation of the FLSA's similarity requirement. Given the ongoing developments of the law in this field, the Court applies—for now—the traditional two-step approach it has long espoused.

At the first stage of that traditional two-step, "the court exercises its discretion to determine whether a collective action is appropriate, but makes no credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Davenport v. Charter Commc'ns, LLC*, No. 4:12-cv-00007-AGF, 2014 WL 1272783, at *4 (E.D. Mo. Mar. 27, 2014) (citations and internal quotation marks omitted). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to opt-in." *Id.* (citations and internal quotation marks omitted).

### III. Discussion

#### A. Conditional Certification

An automatic deduction of time allotted for a meal break does not necessarily violate the FLSA. *McLean v. Health Sys., Inc.*, No. 11-cv-3037-DGK, 2011 WL 6153091, at *6 (W.D. Mo. Dec. 12, 2011). That is especially true when an employer both has and follows a written policy requiring it to pay employees for all time worked. *Dernovish v. AT & T Operations, Inc.,* No. 09-cv-15-W-ODS, 2010 WL 143692, at *2 (W.D. Mo. Jan. 12, 2010). But employees may still state a claim for an FLSA violation if they can show that the defendant has "a common or uniform practice . . . to not follow [their] formal, written policy." *McClean*, 2011 WL 6153091, at *6.

That is precisely the case here. "Cupp does not assert that [MHM's] explicit policy was unlawful," she explains. Doc. 56 at 5. "[Instead, s]he takes issue with its *actual* policy"—

5

namely, to "automatically deduct at least thirty minutes from employees' time each shift . . . even though their patient-facing jobs often require them to work through the shifts." *Id.* (emphasis in original). Plaintiffs allege that MHM automatically deducted pay for meal breaks while simultaneously failing to relieve them of their duties, knowingly leaving them to work straight through their shifts without a break and without appropriate compensation. Doc. 47-2 at ¶¶ 9–12; doc. 47-3 at ¶¶ 9–12; doc. 47-4 at ¶¶ 9–12; doc. 47-5 at ¶¶ 9–11; doc. 47-6 at ¶¶ 9–12; doc. 47-7 at ¶¶ 9–12; doc. 47-8 at ¶¶ 9–12; doc. 47-9 at ¶¶ 9–12; doc. 47-10 at ¶¶ 9–12; doc. 47-11 at ¶¶ 10–13; doc. 47-12 at ¶¶ 8–9. Given how much Plaintiffs were already working, the time allegedly deducted would have amounted to valuable overtime pay. Doc. 10 at ¶¶ 36–37. And though MHM had a written policy that plaintiffs would be "relieved of all duty," "free to come and go as they please," and entitled to pay in the event that they were unable to enjoy the full break, *see* doc. 53 at 3–4, Plaintiffs allege that MHM's actual practice was to require them to stay on duty at all times, even as the deductions continued. Doc. 10 at ¶¶ 32–35.

Those allegations suffice to state a claim that MHM has denied Cupp and similarly situated employees overtime wages under the FLSA. Further, the Court finds that Plaintiffs' 11 signed declarations constitute sufficient evidence that a class of similarly situated patient-facing employees exists, thereby establishing a "colorable basis" for conditional certification. *McCallister*, 2014 WL 988448, at *2 ("Conditional certification is appropriate at this stage when the plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exist" (citation and internal quotation marks omitted)). The declarations from eleven hourly MHM employees spanning at least nine different facilities in seven different patient-facing roles (nurse, lab technician, etc.)—each stating that MHM automatically deducted a meal break from their pay even as it expected that they work throughout the break—meet the required

standard. *See* docs. 47-2–47-12. Each declaration describes, on the basis of personal knowledge, a nearly identical state of affairs: the patient-facing position, the requirement to remain on duty or responsible for patients at all times, and the regular deduction of time. *See id.* Most of the declarations also allege that the deducted time would have typically, if not always, qualified for overtime pay. *See id.* Finally, the declarations span facilities across the three states enumerated in the proposed class. *Id.* Based on this evidence, the Court finds that Plaintiffs have established a colorable basis for their claim that MHM has a regular policy or practice of deducting overtime pay for meal breaks while requiring patient-facing employees in Florida, Indiana, and Kansas to remain on the job without a break.

MHM resists this conclusion. First, it argues that Plaintiffs do not allege a common FLSA-violating policy or plan because their allegations that they were required to carry radios and respond to emergencies while on meal breaks do not suffice to demonstrate that the meal breaks qualify as compensable time. Doc. 53 at 8–10. It also points to the Eighth Circuit's decision in *Henson v. Pulaski Cnty. Sheriff Dep't* for the proposition that it is "unrealistic to hold that an employer must compensate employees for all meal periods in which the employee is relieved of all duties except simply remaining on-call to respond to emergencies." *Id.* at 8–9 (quoting 6 F.3d 531, 534 (8th Cir. 1993)). But that argument fails to capture the full extent of Plaintiffs' allegations. The allegations are not merely that they were required to respond to emergencies, but that they were required or expected to "car[e] for [their] patients at all times" and "respond to the needs of [their] patients and other co-workers at all times during [their] shifts." Doc. 47-2 at ¶¶ 9–12; *see also* doc. 47-3 at ¶¶ 9–12; doc. 47-4 at ¶¶ 9–12; doc. 47-5 at ¶¶ 9–11; doc. 47-6 at ¶¶ 9–12; doc. 47-7 at ¶¶ 9–12; doc. 47-8 at ¶¶ 9–12; doc. 47-9 at ¶¶ 9–12; doc. 47-10 at ¶¶ 9–12; doc. 47-11 at ¶¶ 10–13; doc. 47-12 at ¶¶ 8–9. That distinction makes for a

7

significant difference:  the latter allegations, unlike the former alone, indicate that MHM's "meal breaks" were hardly ever breaks at all.

Second, MHM argues that Plaintiffs' allegations cannot be correct because it has provided evidence that it regularly reversed the pay deductions when informed that an employee was unable to take a bona fide break.  Doc. 53 at 10–12.  It relies on two cases for that argument: first, *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 940–43 (D. Minn. 2009), which chose to consider the defendant's evidence of pay deduction reversals in its order denying conditional certification; and second, *Evans v. Cont. Callers, Inc.*, No. 4:10-cv-02358-FRB, 2011 WL 10099121 at *7 (E.D. Mo. Nov. 16, 2011), in which the court noted the opportunity for reversals of pay deductions in its denial of conditional certification.  But neither of those cases is persuasive.  First, the *Saleen* court opined that given the sheer size of the proposed class, it would be "not unreasonable to expect plaintiffs to conduct at least some discovery to justify their request for conditional certification.  The Court is therefore unwilling, in the context of this case, to ignore [the defendant's] evidence."  *Saleen*, 649 F. Supp. 2d at 942.  But ramifications of sheer class size aside, that approach imposes a higher standard than the one long required under the traditional test at this stage of litigation.  The test for conditional certification at this stage is simply whether Plaintiffs have made "substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  *Getchman*, 2017 WL 713034, at *4 (citation omitted).  Plaintiffs need merely make a "modest factual showing," *Kautsch*, 504 F. Supp. 2d at 690, sufficient to "establish[] a colorable basis for their claim that a class of similarly situated plaintiffs exist." *McCallister*, 2014 WL 988448, at *2.  The standard, in other words, considers only whether Plaintiffs have come forth with enough for certification—not whether their evidence stands up to contrasting evidence proffered by MHM.  *Id.* ("In a typical

8

case, the court decides whether to conditionally certify a class based solely on the plaintiff's affidavits" (citation omitted)); *see also Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 891 (S.D. Oh. 2016) ("a balancing of Plaintiffs' and Defendants' competing affidavits would require credibility and factual determinations and is thus improper at this time"). Here, Plaintiffs have come forth with both substantial allegations and a modest factual showing—via 11 signed declarations—establishing a colorable basis for those allegations. Under the lenient standard applicable at this stage, that much is enough. *See also Peck v. Mercy Health*, No. 4:21-cv-00834-RLW, 2022 WL 17961184, at *4–5 (E.D. Mo. Dec. 27, 2022) (holding that despite evidence of pay-deduction reversals, certification was appropriate because Plaintiffs had "provided sufficient evidence that there was a company-wide environment wherein employees routinely could not schedule or take uninterrupted meal breaks, yet had 30 minutes of pay deducted").

Second, the *Evans* court denied conditional certification not solely because it believed that the reversal of an employee's pay deduction rendered the employer's policy FLSA-compliant, but largely because the plaintiff in that case had struggled to "show similar identifiable facts between employees paid at a [non-hourly] rate in a separately managed St. Louis office and employees paid at an hourly rate in a separately managed New York office." 2011 WL 10099121 at *7. Each office, the court noted, "operated as a standalone office under separate and independent general managers who controlled the operations of their respective office, including the method of compensation to their employees." *Id.* And with respect to the automatically deducted lunch break in particular, "the New York office's policy [appears] to be different in that it deducted thirty minutes for a lunch break as opposed to the one-hour lunch break imposed in the St. Louis office." *Id.* The plaintiff's failure, in that case, to "show[] that he

9

shares identifiable facts or a legal nexus with other employees with regard to the challenged meal policy" doomed his conditional certification efforts. *Id.* at 4.

In sum, the Court finds that Plaintiffs have provided substantial allegations that the putative class members were together victims of a common policy or plan. Plaintiffs adequately allege that, despite MHM's written policy to pay for all hours worked, its actual practice did not compensate employees for time worked during the meal break. *See McClean*, 2011 WL 6153091, at *6 (conditionally certifying collective action involving automatic-meal-break deductions even though the formal written policy claimed to compensate employees). Accordingly, the Court conditionally certifies Cupp's proposed class.

### B.     Notice

Plaintiffs also seek court approval regarding the means and substance of Plaintiffs' proposed notice to putative members of the conditionally certified class. Plaintiffs ask the Court to authorize notice by mail, e-mail, and text message to all putative members who worked for MHM from January 23, 2020 to the present, with a notice period of 60 days. Doc. 46 at 18–19. They also request that the Court order MHM to provide Plaintiffs' counsel with the names, last known home addresses, email addresses, and phone numbers for all proposed class members. *Id.* at 18. Meanwhile, MHM opposes the content of Plaintiffs' proposed notice and insists that they effect notice only by mail. Doc. 53 at 12–15.

The Court now orders the parties to meet and confer—i.e., actually speak with one another—to address any disputes regarding notice and what information MHM must provide to Plaintiffs. By no later than February 26, 2024, the parties must report the following to the Court: (1) the date, time, and length of such meetings; and (2) a description of any agreement reached regarding notice. If the parties do not reach an agreement on the matter, each party must submit

10

their best proposal and the Court will adopt either of those proposals in full (i.e., "baseball arbitration").

## IV. Conclusion

The Court grants Plaintiffs' motion to conditionally certify the class, doc. 46, and orders the parties to meet and confer regarding Plaintiffs' notice to prospective collective-action members. Likewise, in the light of this order, the Court denies without prejudice Cupp's pending [58] motion to compel discovery and orders the parties to meet and confer regarding the terms of discovery for opt-in or putative plaintiffs and the discovery matters set forth in that motion to compel.

By no later than February 26, 2024, the parties must report to the Court the date(s), time(s), and duration of all such meet-and-confer sessions, along with a description of and stipulation to any agreements reached. If the parties cannot agree regarding any discovery matter, each party must include in the report its best proposal on each of the notice and discovery issues, and the Court will choose one proposal on each issue to adopt in full (i.e., baseball arbitration). Finally, the Court orders the parties to provide, by the same date, their preferred dates for mediation, as well as the earliest date by which they anticipate this case will be ready for trial.

So ordered this 11th day of February 2024.

_SL R. Cl_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

11